IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| GEORGE CHUKWUKA CHIMA, § <br> Petitioner, § <br> § <br> v. § <br> § <br> UNITED STATES OF AMERICA, § <br> Respondent. § | No. 3:17-CV-2987-D-BT |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Petitioner George Chima filed a *pro se* petition for a writ of *coram nobis* challenging his 2012 tax fraud conviction. The district court referred the resulting civil action to the United States magistrate judge, pursuant to 28 U.S.C. § 636(b) and a standing order of reference. For the following reasons, the petition should be denied.

I.

Petitioner is a citizen of Nigeria. On April 2, 2010, he filed an application for naturalization in which he stated orally and in writing that he had never committed a crime or offense for which he had not been arrested. *See United States v. Chima*, No. 3:16-cv-387-L (N.D. Tex.) (ECF No. 13 at 2). Petitioner knew this information was false because he had assisted in preparing fraudulent tax returns in 2008 and 2009. *Id.* Petitioner was approved for naturalization, and on July 13, 2010, he became a naturalized United States citizen. *Id.*

1

On November 20, 2012, Petitioner was charged with aiding and assisting in a fraudulent income tax return, in violation of 26 U.S.C. § 7206(2). Petitioner pleaded guilty and admitted he prepared, or assisted in preparing, approximately 505 fraudulent federal income tax returns for the 2008 and 2009 tax years. *See United States v. Chima*, No. 3:12-cr-383-D (N.D. Tex.) (ECF No. 4 at 4-5). On April 19, 2013, the district court sentenced him to 30 months in prison and ordered him to pay $776,341 in restitution. On August 7, 2015, Petitioner was released from prison and began serving one year of supervised release. (ECF 32 at 4.)

On February 11, 2016, the government filed a complaint to revoke Petitioner's naturalization. *See United States v. Chima*, No. 3:16-cv-387-L (N.D. Tex.) On June 23, 2016, Petitioner filed a joint motion for consent judgment admitting he committed tax fraud and willfully concealed his criminal activity when he applied for naturalization and agreeing to his denaturalization. On June 23, 2016, the district court entered judgment denaturalizing Petitioner.

On August 3, 2016, the government charged Petitioner as removable and served him at his home with a notice to appear. *Chima v. Sessions*, No. 17-60409 (5th Cir. 2018) (Resp.'s Mot. to Dismiss, Ex. A.) On April 27, 2017, the Board of Immigration Appeals issued a final order of removal. (ECF No. 32 at 3.) Petitioner appealed, and on June 21, 2018, the Fifth Circuit Court of Appeals dismissed the appeal. *Chima v. Sessions*, No. 17-60409 (5th Cir. 2018).

On October 19, 2017, Petitioner filed his *coram nobis* petition, in which argues he received ineffective assistance of counsel when his criminal trial counsel

advised him to plead guilty to the tax fraud charges and informed him that his conviction would not subject him to removal from the United States.

Petitioner was removed to Nigeria on or about October 25, 2017. (ECF No. 32 at 4 n.2).

## II.

Petition is seeking a writ of *coram nobis*. "The writ of *coram nobis* is an extraordinary remedy available to a petitioner no longer in custody who seeks to vacate a criminal conviction in circumstances where the petitioner can demonstrate civil disabilities as a consequence of the conviction." *United States v. Esogbue,* 357 F.3d 532, 534 (5th Cir. 2004) (quoting *Jimenez v. Trominski,* 91 F.3d 767, 768 (5th Cir. 1996)). Here, Petitioner has served his sentence, he has been removed from the United States, and he is unable to travel to the United States because of his conviction.[1] Thus, he satisfies the first two elements for *coram nobis* relief. *See United States v. Castro*, 26 F.3d at 557, 559 (5th Cir. 1994) (*coram nobis* petitioners must be "no longer in custody" and "must be suffering civil disabilities as a consequence of criminal convictions"); *see also Esogbue*, 357 F.3d at 534 (district court had jurisdiction to hear *coram nobis* petition when petition was filed in the court of conviction, sentence was served, and petitioner faced consequence of deportation).

---

[1] Petitioner did not contest his denaturalization. It is not clear if he did not contest the denaturalization because of the facts he admitted to in his guilty plea.

Petitioner, however, must also show that a fundamental error justifies vacating his conviction, and that sound reasons exist for his delay in seeking earlier relief. *See United States v. Dyer*, 136 F.3d 417, 422 (5th Cir. 1998) (quoting *United States v. Morgan*, 346 U.S. 502, 511-12 (1954)) (*coram nobis* will issue only to correct errors of "the most fundamental character" and "sound reasons" must exist for failure to seek earlier appropriate relief). Petitioner fails to satisfy these requirements.

### (A)   Fundamental Error

Petitioner fails to show that a fundamental error justifies vacating his conviction. Although "ineffective assistance of counsel, if proven, can be grounds for *coram nobis* relief," *Esogbue*, 357 F.3d at 534, Petitioner fails to show he received ineffective assistance of counsel because he fails to establish prejudice.

To sustain a claim of ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Petitioner of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id.* "Rather, the defendant must demonstrate that the prejudice rendered sentencing

4

'fundamentally unfair or unreliable.'" *Id.* (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

Petitioner claims he informed his criminal trial counsel that he stated in his 2010 naturalization application that he had never committed a crime or offense for which he had not been arrested. Pleading guilty to the tax fraud charge would show that his 2010 naturalization statements were false. Petitioner claims that, despite this information, his counsel advised him to plead guilty to the tax fraud charge, and incorrectly told him he would not be subject to removal due to the conviction.

Taking Petitioner's claims as true,[2] Petitioner has established his counsel rendered deficient performance. *See Padilla v. Kentucky*, 559 U.S. 356, 366 (2010) (holding the Sixth Amendment right to counsel includes the right of a criminal defendant to be informed of the deportation consequences of entering a guilty plea).

Petitioner, however, has not established prejudice under *Strickland*. To establish that he was prejudiced by his counsel's advice to plead guilty, Petitioner must establish that "but for his counsel's alleged erroneous advice, he would not have pleaded guilty but would have insisted upon going to trial." *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994). This assessment will turn partially on "a prediction of what the outcome of a trial might have been." *Id.* at 206 (citing *Hill*,

---

[2] Respondent did not challenge Petitioner's claims that Petitioner informed his criminal trial counsel about his false statements in his naturalization proceeding and that counsel informed Petitioner he would not be subject to removal if he pleaded guilty.

5

474 U.S. at 56-58). Further, a petitioner's mere statement that he would have insisted on a trial is insufficient. As the Fifth Circuit has stated:

> [Petitioner] alleged that he would have gone to trial had he known that he was ineligible for probation. But he failed to allege that going to trial would have given him a reasonable chance of obtaining a more favorable result. That omission is fatal to his claim. As we have explained, demonstrating prejudice requires showing not only that the petitioner would have gone to trial, but also "that going to trial . . . would have given him a reasonable chance of obtaining a more favorable result." *United States v. Shepherd*, 880 F.3d 734, 743 (5th Cir. 2018) (quoting *United States v. Batamula*, 823 F.3d 237, 240 (5th Cir. 2016) (en banc)). *See also Batamula*, 823 F.3d at 241 (ruling allegations and evidence "suggesting only that [petitioner] would have proceeded to trial had he known" are insufficient to demonstrate prejudice); *United States v. Kayode*, 777 F.3d 719, 726 (5th Cir. 2014) ("Another important factor is whether the defendant has demonstrated that he was likely to succeed at trial."). In other words, "counsel's ineffectiveness is only a basis for vacating a conviction if there is a reasonable probability it made a difference to the outcome of the proceeding." *Young v. Spinner*, 873 F.3d 282, 285 (5th Cir. 2017).

*King v. Davis*, 898 F.3d 600, 605 (5th Cir. 2018).

Petitioner does not argue—much less submit evidence to prove—that there was a reasonable chance of acquittal if he had proceeded to trial. Moreover, the evidence of his guilt was substantial. The evidence showed that from January 2009, through April 15, 2010, Petitioner filed or caused others to file hundreds of tax returns that fraudulently claimed tax credits. (*United States v. Chima*, No. 3:12-cr-383-D, ECF No. 14-1 at §§ 15-17.) This resulted in fraudulent tax preparation fees for Petitioner and a loss to the IRS of $776,341. (*Id.*)

Agents began investigating Petitioner in February 2010. (*Id.* at § 10.) On February 4, 2010, Petitioner prepared and filed a fraudulent tax return for an undercover agent. (*Id.*) On April 1, 2010, pursuant to a search warrant, agents searched for and obtained records from Petitioner's residence and business. (*Id.*) The investigation showed that Petitioner used duplicate home addresses on multiple tax returns, that addresses on multiple tax credit forms did not match the addresses on the tax returns, and that some of these addresses did not exist. (*Id.* at §§ 16-18.) The investigation also showed that Petitioner falsified his clients' tax returns without their knowledge. (*Id.* at 18.) Investigators interviewed some of Petitioner's tax clients and the clients stated Petitioner did not provide them with a copy of their tax return and did not review the tax return with them. (*Id.*) Petitioner has not explained how he would have rebutted this evidence at trial. He has not established the required *Strickland* prejudice and has failed to show fundamental error.

**(B)   Sound Reasons**

Petitioner also must show that sound reasons exist for his delay in seeking earlier relief. *See Dyer*, 136 F.3d at 422. The government argues there were no sound reasons for Petitioner's delay because Petitioner received notice of the possible immigration consequences of his guilty plea when the district court raised the immigration issue during sentencing. The record states:

> COURT:    One of the provisions I'm going to put in the terms and conditions of supervised release concerns the defendant not illegally re-

7

|  |  |
|---|---|
|  | entering the United States if he is deported, removed, or allowed voluntary departure. Of course, the Court in passing sentence does not involve itself in matters of naturalization or immigration. |
| DEFENSE: | Your Honor, actually, he is a citizen of this country. |
| COURT: | He is. But the criminal conduct that he engaged in in this case preceded the time that he was naturalized, and I don't know whether in his paperwork he lied and said that he hadn't been involved in any criminal conduct. I don't know whether that will affect his citizenship or not. I'm not taking that into account for any reason in my sentence other than to put that provision in the supervised release. |
| DEFENSE: | Yes, your Honor. |
| COURT: | I don't know whether this conviction will jeopardize his citizenship or not. That's not an issue for this Court. |

(ECF No. 13-1 at 8.)

In response, Petitioner claims he relied on defense counsel's statements that he would not be deported, and when the district court raised the immigration issue, defense counsel, "covered the mouth piece of the microphone and asked me not to worry and that the judge is required to give a general warning." (ECF No. 32-1 at 2.) For the purposes of these findings, conclusions, and recommendation, the magistrate judge accepts Petitioner's assertions as true, and finds Petitioner's reliance on his defense counsel's affirmative statements that he would not be removed prevented him from seeking relief at the time of sentencing.

8

On February 11, 2016, the government filed its complaint to revoke Petitioner's naturalization based on his conviction and his false statements during his naturalization process. Petitioner states it was at that time that he became "aware that his trial counsel had not properly advised him of the potential immigration consequences associated with his case." (ECF No. 32 at 2.) At that time, Petitioner had been released from custody and was serving his term of supervised release. He was therefore in custody under 28 U.S.C. § 2255 and could have filed a § 2255 petition at that time. *Pack v. Yusuff*, 218 F.3d 448, 455 n.5 (5th Cir. 2000) (stating a petitioner is "in custody" under § 2255 while he is on supervised release).

Petitioner argues he did not file a § 2255 petition once he learned that his trial counsel had not properly advised him about the immigration consequences of his guilty plea because he relied on his immigration attorney's assurance that he would not be removed. He states:

> In February 2016, I was served with a complaint to revoke my citizenship which prompted me to hire an (sic) Immigration Attorney Shola Sutton. He assured me that I will get my Permanent Residence Card (Green Card) back and could work my way back to citizenship and he would fill (sic) the necessary forms to get it back. I believed him, so I conceded and agreed to the denaturalization because I knew I was going to remain in the United States.
>
> In (sic) August 2, 2016, I spoke with the immigration attorney again who confirmed that he was going to fill out the application to request my Green Card. To my surprise I was picked up by ICE agents and detained the very next day (August 3, 2016), due to this incident the

9

> immigration attorney advised me to challenge the ICE hold and file for Asylum under the Convention Against Torture (CAT) since I was afraid to go back to my home country.
>
> Due to the professional advice of both attorneys at different times I did not pursue a claim for ineffective assistance of counsel through 28 U.S.C. § 2255, since (1) I wasn't served with a complaint to revoke my citizenship while I was in custody and (2) I was told I could get my permanent residence card back and remain in the United States with my family. Hence, attacking the immigration consequences of my conviction administratively based upon the advice of two different attorneys appealed to me instead of attacking it collaterally.

(ECF No. 32-1 at 2-3.)

Petitioner, however, was still in custody when he was served with the denaturalization complaint because he was on supervised release at that time. Further, he states that once he was served with the denaturalization complaint, he knew trial counsel had not properly advised him about the immigration consequences of his guilty plea. (ECF No. 32 at 2.) Nothing prevented Petitioner from filing a § 2255 claim at that time. Instead, Petitioner states he chose to pursue administrative remedies because it "appealed" to him.

Further, Petitioner failed to use "reasonable diligence" in filing his *coram nobis* petition. *See Dyer*, 136 F.3d at 427 (stating "a petitioner seeking *coram nobis* must exercise 'reasonable diligence' in seeking prompt relief."). Petitioner states he became aware of the "automatic deportation consequences" of his conviction on

10

August 3, 2016, when he was detained by ICE.[3] (*See* ECF No. 3 at 10.) However, he waited over a year, until October 19, 2017, to file his *coram nobis* petition.

Petitioner argues he used reasonable diligence in filing his petition because before and after filing his *coram nobis* petition, he was still pursuing remedies in his immigration proceedings. In his immigration proceedings, however, he did not challenge his conviction or dispute that he was subject to removal due to his conviction. Instead, he sought a deferral of his removal under the Convention Against Torture. *See Chima v. Sessions*, No. 17-60409 (5th Cir. 2018) (Resp.'s Mot. to Dismiss, Ex. A). Therefore, although he was seeking to defer his removal, he was not pursing any challenge to his conviction. He thus did not diligently seek relief to vacate his conviction. Petitioner has not established he is entitled to *coram nobis* relief.

### III.

The petition for a writ of *coram nobis* should be DENIED.

Signed April 15, 2019.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

---

[3] At that time, Petitioner was still serving his term of supervised release. His supervised release ended on August 6, 2016. (ECF No. 32 at 4.)

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions and recommendation on Plaintiff. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).